111-1894, Marilyn Lukesh v. A.B. F. Freddo Counsel, you may proceed. Good morning, Brad Cosgrove, appearing on behalf of the Lukesh family. May I please the court? Counsel? Gentlemen, this is a case that involves really two separate questions that I'm going to address here today. The very first question that I'd like to talk about is the Commission's decision, specifically at page 6 of their decision, where they say that there's uncertainty as to whether or not the petitioner's husband actually had lung cancer. I think the big hang-up or the biggest issue that the Commission had with the case is the fact that there was a bit of uncertainty as to whether or not lung cancer was the primary cancer in the occupational exposure case. And I'm going to propose to you that the plaintiff has met their burden of proof by a preponderance of evidence as to this specific allegation. The question is whether or not it was lung cancer as the primary. There's three separate qualified individuals that give opinions on this. I think the Commission cites a few medical records from non-qualified doctors on the issue. But the real three main doctors that talk about whether lung cancer was the primary is the treating oncologist. So Mr. Lukesh goes to the hospital. He's referred to an oncologist that's the Dr. Stennecker. I might have said that wrong. I apologize. But you can look at his initial oncological... Stennecker is the claimant's principal treating physician, is that correct? Principal treating oncologist. So the medical records of Stennecker consistently state that the sedent's cancer was of unknown primary or uncertain etiology. While he suspected that the origin of the disease was most likely lung cancer, he noted a chest X-ray and CAT scan of the lungs were both negative. So how does that support the argument that the evidence establishes based on him there was lung cancer? Dr. Stennecker's note states explicitly the most likely primary is lung cancer. Most likely. The standard of proof for a workman's compensation case, as with all civil cases in Illinois, is more probably true than not true. Could or might is good enough. It's not the best. More likely than not is better. The treating physician in his oncological note, the first consult report, the most comprehensive note that he has, states explicitly the most likely primary is lung cancer. But fine. Fine. Look to the hired Section 12 examiner by the defendant. They hired Dr. Scholl, which I'll get into in a second. And specifically on Dr. Scholl's deposition, he was asked the question, what is the likely cause? And if you look at 45 of his deposition, he says to this exact question, now doctor, it's more probably true than not true, his cancer was a lung cancer. Is that correct? Answer, I think so. The defendant's own Section 12 examiner states more probably true than not true, lung is the primary. The original oncological note from the treating oncologist says that the most likely primary is lung cancer. Dr. Scioto, who the commission found in this case to be the most qualified expert in the case, states that lung is the primary. I think that there is no other way that I could, as the lawyer for the petitioner, meet the burden that I need to do to prove something is more probably true than not true, than to present the three important people to you, plaintiff's 12, Section 12 examiner, defendant's 12 examiner, and then the treating oncologist, all of whom state, more likely than not, the cause of the primary cancer is lung cancer. But where is this Steinecker, where does this record where Steinecker says it's, decedent cancer was of unknown primary, how do you read that? I read that to mean that it's not 100% definitively true that the primary cancer was lung cancer. That there is less than a 100% certainty as to the primary cause, but meeting the burden of proof, more likely than not, it's a lung cancer. So if the commission is looking at conflicting medical evidence, isn't it within their purview to decide the weights to be given to that evidence? I don't think there is conflicting medical evidence, but the legal proposition that you cited is true. That's a correct legal proposition, that if there is conflicting evidence, yes. But in this particular case, if you look at the entire note of Dr. Steinecker, the most likely primary cause is lung cancer. What do you make of Steinecker's note that the chest x-ray and CAT scan both showed that the lungs were negative? How does that jive with this opinion? I think it makes total sense. How many people have mammograms that are negative that show breast cancer that metastasize to the lymph nodes? Just because you can't see it on a diagnostic film doesn't mean that that's not where it originates. I think that anybody would agree with that. Could be. Correct. Once again, it's either or. What did Rydell say? Pardon me? What did Dr. Rydell say? Dr. Rydell is a hematologist or a, excuse me, a critical care doctor. What did he say? Dr. Rydell, I believe, is a female, and I think that her note explicitly copies Dr. Steinecker, the oncologist's note, and that she doesn't say anything other than a recitation of the consult note of Dr. Steinecker. She says it was debatable that the decedent had a primary lung malignancy. But does not say whether it's likely a lung cancer or not likely a lung cancer. She just says it's debatable. And the debate in the case is clear by the people that have given opinions, including the Section 12 examiner of the defendant, or the respondent, excuse me, that lung cancer was the primary cause. From there, there's been an opinion based on or an argument by the commission that essentially they're saying because the plaintiff hasn't met the burden of proof of the lung being the primary cancer, that the next step of causation cannot be established. And I have a hard time understanding where the plaintiff could have done anything more than what was done in the case. I know that there is a notation in the commission's decision that states that the specific peer-reviewed journals that are discussed in the briefs were not attached as evidence. Well, they couldn't have been attached as evidence. If they would have been submitted as evidence at the end of the trial, there would have been an objection to hearsay. You can't admit it. There's no way you could put a peer-reviewed journal into evidence as an exhibit. You have to have an expert who relies on the information, which is what occurred in the case. Dr. Scioto testified that he relied on peer-reviewed, well-accepted literature, and that the well-reviewed, excuse me, well-accepted literature has proved that exposure or chronic exposure to diesel fumes or diesel exhaust is an increased risk of causing. Yes, he did say that. Didn't he also admit that the origin of the sedent's cancer had, quote, unquote, not been determined? Once again, you have the opinion that it could have been a cause based on medical research and literature, but then he, at the end, says his cancer has not been determined. I think if you keep reading, the next sentence on that says, very likely primary was lung cancer. Again, the burden of proof is to prove more likely than not that something was. And the problem with this, with trying to decide what the primary was in this specific case, is a person who's exposed to an occupational hazard such as this individual was, by the time he finds the disease, it had already ravaged his body to the point where he was at the point of no return. So for somebody to say, because you can't say this is the primary, for absolute certainty because his body was filled with cancer, that you can't look at a person that is filled with cancer and decide whether the egg came before the chicken or the chicken came before the egg because you didn't have the opportunity to have a person who fell down the stairs and broke their wrists so that you can look at it the day of the incident. Occupational exposure cases are different. You have to look at it at a later point. These aren't things that are readily apparent where you all of a sudden have a disease that occurs instantly. Sometimes it's true, but a lot of the times this is a chronic exposure where by the time the disease process is caught, it's too late and there's nothing that you can do about it. It comes down to a burden of proof. As difficult as the hurdle may be in the occupational theory of disease, the occupation would still have been the cause of the illness. The fact that somebody ends up with cancer throughout their body, as tragic as it is, still has to be tied in to the occupation. Absolutely. And then my burden of proof as the petitioner is to prove more likely than not what the cause or the primary was and then from there what the cause of the primary was. And the way to do that is through expert testimony. The experts in the case that were deposed and then the medical oncologist, the only one that there's a record of, the only person that's really qualified to give you the opinion of what a primary cancer was in this case, state likely was a lung cancer. Likely meets the burden of proof. It does. The defendant's, or excuse me, the respondent's section 12 examiner states it as clear as a bell. I mean, that to me is a concession that all parties agree that it's a lung cancer. It's just a matter of whether or not exposure to the occupational hazards were a cause of it. Is Steinecker right that it was an unknown primary, uncertain ideology? And then follows up with most likely a lung. Well, that's your spin. No, the commission has a right to look at those phrases and determine whether he's actually saying it's more likely true than not true that it was a lung cancer or I don't really know, but my best guess is it's lung cancer. And had his note said, my best guess is a lung cancer? No, his note said unknown primary, uncertain ideology. Now, you can't have it both ways. You can't run with the hounds and hide with the fox. So either he knows or he doesn't know. And I think, Your Honor, if you look to his oncological note, the actual note that you're reading from, which is found in the record I believe at age 278, it states the most likely is primary cancer originating in the sedent's lung. So you're reading a portion of his note that says unknown ideology. Had he went on and said in that note, I cannot tell what it is, I'd be speculating to say whether a primary was lung. Well, why can't the commission determine, interpret his note as saying, I don't know what it is, but most likely it's lung cancer and place it in the realm of possibility, not in the realm of probability. Well, and I think that if the commission looked at the specific note and they said in there that they, quote, Counsel, if he didn't write unknown or uncertain, I'd agree with you. He did. Now they've got to determine what did he mean. Did you ask him what he meant? Did anybody ask him what he meant? He wasn't deposed because he told us what he meant. The likely cause was? Well, maybe you should have asked him what he meant. Maybe he should have said within some degree of medical certainty, I can say that this man had lung cancer. And when faced with the deposition of the respondent's expert, who admits that lung is the primary, in his opinion, an oncologist, why would we put the case through another person when there's universal agreement by the experts in the case that lung was the primary? I'm not sure there is universal, and I don't think the commission was. The commission says you failed for one of evidence that he, in fact, had lung cancer. Right. That's what they said. And they hung it on uncertain and unknown. That's how they interpreted the note. All of these opinions, when you think about it, were qualified to a certain extent. Even the guy who cited the literature said the same thing. It was unknown ultimately. So, I mean, you have these very vague qualified opinions. But I don't think that that is the opinion. The opinion ultimately is whether or not the cause of the cancer, more likely than not, was caused by, was the primary of the lung. That's it. Is it an unknown etiology? I think, if anything, it gives it more weight that everybody was being honest, is that it's not a 100 percent certainty, but the most likely and probable cause was a lung cancer that everybody agreed with. The likely cause. And I think that likeliness is the only way that you can prove a case. Thank you. Thank you, Counsel. Good morning, Your Honor. May it please the Court, Counsel. My name is Arik Hatu. I'm here on behalf of ABF Freight. I believe Your Honor's questioning was very poignant and is hitting the nail right on the head in this case. The simple fact of the matter is, at arbitration, at trial, this case was a very complex case. Here before you, the issues are very simple. Did Counsel meet the burden of proof? He did not. This is a case. What do you make of this likely, likely, likely theory today? Well, likely, we don't know what likely means. There are thousands of different kinds of cancers. Likely, the likely culprit could be a 10 percent chance against 1 percent chances for all the rest. We don't know. We simply don't know. There was no evidence that there was lung cancer. None. We have opinions from three doctors who say, I don't know, uncertain cause. Most likely, maybe likely, we don't know to what level they agree that that was the cause. We just don't. Would an autopsy establish if there was lung cancer? It could have. We don't know. This speaks directly to the argument that there was a failure of proof here. There are many things that could have been done prior to this case going to arbitration that could have identified or provided additional evidence as to, one, what the cancer was, what the originating cause of the cancer was, and, number two, what the cause of that cancer could have been. The issue before you is whether the commission decision was against the manifest way to the evidence that they found that the petitioner did not prove that he had the lung cancer. There's a secondary issue as to if there was lung cancer, what the cause of that may have been. It's simply the fact of the matter that there were facts and arguments on both sides. The commission has a right to judge credibility of witnesses, to weigh medical evidence, to weigh it against one another. What we have here is a situation where the petitioner simply failed to prove a certain point in evidence that this was a lung cancer and that it was related to work. Did the commission ever really get to the secondary issue? I don't believe that they actually did. So we don't know what they didn't need to, because they found that he didn't establish that he had lung cancer. But I don't think they came up with any definitive determination that if it was a lung cancer, it wasn't caused by the fumes. If they didn't, then Your Honor is accurate. They don't have to. They didn't have to once they reached the first. The second issue really isn't an issue for us. Then speaking to the first issue solely, the question that's presented to you is whether the commission had enough evidence to rule in favor of the respondent in this matter. And that question hinges upon whether there was enough evidence for them, not whether there was enough evidence for them to find that the petitioner had lung cancer, but there must have been so much evidence for them that they had to have found him to have lung cancer. That's simply not the case. The commission waited. They looked at all the evidence. There is ample evidence in the medical record that this is an adalcarcinoma of unknown origin and etiology. Your Honor stated that in questions to the Petitioner's Counsel. It's clear that the doctors who were treating this man did not know what the cause of his cancer was. They didn't know where it originated. Your Honor stated that the medical records identified that there was nothing found on the CAT scan in the chest. The x-rays and the CAT scans were negative there. It was glandular. That's where they found it. Did it originate in the lungs? We just don't know. We don't know. There's no way to find out. Was the commission within its rights to find that they did not meet their burden? Yes, they were. There is ample evidence there to make that finding. On appeal, this is a manifest weight issue. In order to meet the burden of manifest weight of the evidence, the evidence has to be so strongly supportive that the opposite conclusion must be true. That is simply not the case here. There is ample evidence in the record that they did not know where this cancer started. And there is ample evidence in the record that there may not even have been cancer in the lung. There were opinions that said likely, possibly. But the commission reviewed that medical evidence and they did not agree with it. They did not find it either credible or they didn't find it supportive of the finding that it did start there. Thank you. Thank you, Counsel. Counsel, you may reply. I just wanted to address one question, whether an autopsy would have shown us anything. And I think the answer to that, take it for what it's worth, is that it would not have shown anything. A biopsy of a lung tissue post-mortem may have, but I don't know. I mean, it was an issue that just wasn't addressed. So I just wanted to answer that question. The real problem that I have with this whole argument, and I do agree with you on that, I think that the commission got hung up on whether or not lung was the primary and did not get to the second issue. And I don't necessarily think that it's, I think I have to prove it's a lung primary before you get to that second opinion. And then finally, I don't think that second issue was addressed. So I don't know how you guys could address that if you were lucky, if I was lucky enough to get you to that point. But I think the fundamental problem that I have with the whole argument is the fact that the respondent's own Section 12 examiner agreed, before we stepped into trial, before we went before the arbitrator on the case, in his deposition, that lung was the primary. Our expert, and that one wasn't qualified either. That one was more probably true than not true, lung was the primary, yes. I don't know how you could then come in here before your honors and say the Section 12 examiner that we hired, who gave an opinion definitively saying that this was a lung cancer, is not an opinion that you should give credence to, the commission shouldn't have, and that it's not a good opinion and we don't know the answer. They know the answer. They paid good money for this expert. They paid good money for the opinion. And the opinion is one that they don't like. And it's the truth. But you can't come in here now and say, well, the person that was. You're almost making the argument that they're bound by that opinion. They're not bound by that opinion. I didn't say that, though. It doesn't bind the commission either. I didn't say that either. The commission obviously rejected it in favor of their interpretation of the treating oncologist's opinion. Now, you disagree with that interpretation. I understand that. But that was their interpretation. And that's what I'm going to ask you gentlemen to look back. And if you look at Dr. Stennecker, if it all hinges on the treating oncologist, and that's what a lot of the questions have been based on, if you would do me a favor, and before you rule on the case, look closely at his oncological consult note. Not a specific sentence, but look at the whole thing.